# In the United States Court of Federal Claims

No. 24-704
Filed: May 5, 2026
NOT FOR PUBLICATION

---

**ABV ROCK GROUP CO. LTD.,**

*Plaintiff*,

v.

**UNITED STATES,**

*Defendant.*

---

*Roy Dale Holmes*, Cohen Seglias Pallas Greenhall & Furman, Philadelphia, PA, for the plaintiff.

*Matthew Paul Roche*, Civil Division, U.S. Department of Justice, Washington, DC, for the defendant.

**MEMORANDUM OPINION AND ORDER**

*HERTLING*, Judge

ABV Rock Group Co. Ltd. ("ABV") was awarded a contract by Saudi Arabia to perform construction on several Saudi military bases. The work was to be paid for by the United States Army Corps of Engineers ("the Corps"). On May 5, 2023, the Corps terminated ABV for default. On May 3, 2024, ABV requested a final decision from the contracting officer and simultaneously filed a complaint under the Contract Disputes Act ("CDA"), 41 U.S.C. 7101 *et seq.*, in this court against the defendant, acting through the Corps. In both claims, ABV requested the termination for default be converted to a termination for convenience and sought $28,756,917.40 in direct and delay costs, and 1,714 days of time extension.

On August 15, 2024, the defendant moved for partial dismissal of the complaint, arguing that the court lacked jurisdiction over most of the claims because the contracting officer had not rendered a final decision on ABV's certified claims, as required under the CDA before a claimant may sue in this court. On September 4, 2024, ABV filed an amended complaint, striking all allegations of entitlement to damages or time extension, preserving only its appeal from the default termination, and sought to stay the proceeding while the contracting officer considered ABV's certified claim. ABV's motion to stay the case was granted.

ABV's certified claim to the contracting officer first alleged that the Corps had breached the implied duty of good faith and fair dealing by improperly handling bonds, withholding retainage and liquidated damages, delaying payments, wrongfully reducing invoices, failing to approve advance payments for procurement, and not approving proposed changes to the contract's Contract Line-Item Number structure. (ECF 23-1 at 37.) ABV also alleged that its

1

default was excused because Saudi Arabia had arrested ABV's principal and froze its assets as part of an anticorruption investigation.  (*Id*. at 39.)  Third, ABV alleged that the Corps had administered the contract improperly with respect to submittal reviews and a proposed contract modification.  (*Id* at 41.)  ABV also alleged several other claims as constructive changes to the contract, including: (1) an increase in the cost of work permits; (2) denial of ABV's request to retrieve backfill offloaded in another contractor's project site; and (3) directives to upgrade airfield systems beyond the scope of the contract.  (*Id* at 43-45.)

On February 19, 2025, the contracting officer issued a final decision denying ABV's claims in their entirety.

After the contracting officer's final decision, ABV filed a second amended complaint on April 18, 2025.  (ECF 18.)  The new complaint requests an order overturning the termination for default and converting it to a termination for convenience.  ABV updated the damages sought and extension of time requested to $33,246,692.40 and 1,616 days.

In 11 discreet subclaims, the second amended complaint reiterates all the claims brought in ABV's claim to the contracting officer and includes a twelfth subclaim regarding fire-alarm systems.  These 12 subclaims are organized under two claims: a claim for the breach of the implied duty of good faith and fair dealing and a claim under the changes clause.

The implied duty of good faith and fair dealing claim includes subclaims for: performance and payment bonds (*id.* at ¶¶ 34-70); the defendant's actions that impeded performance (*id.* at ¶¶ 48-70); the owner's actions that impeded performance (*id*. at ¶¶ 71-82); design-review submittals (*id*. at ¶¶ 85-108); fire-protection submittals (*id*. at ¶¶ 109-12); fire-alarm systems (*id*. at ¶¶ 113-15); network-activity baseline schedule (*id*. at ¶¶ 116-17); fire-protection specialists (*id*. at ¶¶ 118-22); and fire-protection exterior works (*id*. at ¶¶ 123-38).

The changes clause claim includes subclaims for costs and delays related to work permits (*id*. at ¶¶ 143-53); backfill (*id*. at ¶¶ 154-61); and low-current systems (*id*. at ¶¶ 162-66).

On September 16, 2025, the defendant moved for partial dismissal of the second amended complaint.  (ECF 23.)   The defendant did not contest the subclaim alleging that its actions impeded performance (ECF 18 at ¶¶ 48-70), the subclaim for design-review submittals (*id*. at ¶¶ 85-108), or the subclaim for fire-protection exterior works (*id*. at ¶¶ 123-138).  The defendant moved to dismiss all other subclaims under Rules 12(b)(1) or 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject-matter jurisdiction or failure to state a claim.

The defendant argued, and ABV did not contest that (1) all the claims based on non-critical path delays failed to state a claim (ECF 18 at ¶¶ 71-82, 109-12, 113-15, 116-17, 118-22, 143-53); (2) the fire-alarm system subclaim (*id*. at ¶¶ 113-15) had not been presented to the contracting officer for final decision prior to filing the second amended complaint and was therefore not within the court's subject matter jurisdiction; and (3) the owner-impeded performance and work permit subclaims were untimely  (*Id*. at ¶¶ 143-53; 162-66).  Accordingly, these subclaims were dismissed.

The defendant next argued that ABV's performance and payment bonds subclaim was untimely. The defendant contended the claim was untimely because it had accrued in March 2017, when the Corps refused to waive the requirement that ABV either post a bond or provide cashier's checks as security. ABV countered that the claim accrued when the Corps retained the cashier's checks after the contract was terminated for default... In short, the plaintiff argued that, even if ABV was terminated for default, its security could be retained only to cover excess re-procurement costs. ABV argued that the Corps had not asserted a claim for such costs and was therefore obligated to return the security ABV had posted. Under this theory, ABV's claim did not accrue until the Corps unlawfully retained the security.

Paragraph 45 of its second amended complaint alleged that the Corps' "unreasonable decision not to waive the bonding requirements and compel ABV to resort to issuing multiple cashier's checks caused ABV to incur an additional $2,069,340.05 in security costs that were never reimbursed and *that would not have been incurred but for [the Corps'] arbitrary decision of non-waiver.*" (*Id*. at ¶ 45) (emphasis added.)

This paragraph alleged as the source of the injury to ABV the "arbitrary" decision by the Corps in March 2017 not to waive the ABV's obligation to post a performance bond or provide security. The complaint did not allege that the injury was the retention by the Corps of the security ABV had posted. Because the March 2017 non-waiver decision occurred more than six years before ABV filed its complaint, the claim (*id*. at ¶¶ 34-70) was untimely and dismissed.

Finally, the defendant moved to dismiss the low-current systems and backfill subclaims for failure to state a claim, as ABV had not alleged any constructive changes. These portions of the motion were also granted, and these claims (*id*. at ¶¶ 154-61, 162-66) were dismissed under RCFC 12(b)(6).

The only remaining viable subclaims following disposition of the motion for partial dismissal are the subclaims for the defendant's actions that impeded performance (*id*. at ¶¶ 48-70), for design-review submittals (*id*. at ¶¶ 85-108), and for fire-protection exterior works (*id*. at ¶¶ 123-138).

On April 3, 2026, ABV moved under RCFC 15 for leave to file a third amended complaint. ABV seeks to amend its subclaim seeking to recover the security it had posted; the proposed complaint also realleges the facts underlying several previously dismissed subclaims.

RCFC 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." The defendant opposes the motion, so the plaintiff must rely on the court's leave to amend its complaint. Leave to amend should be freely given "when justice so requires." RCFC 15(a)(2). There is a presumption in favor of amendment, which should be granted absent compelling reasons for denial. The Federal Circuit has held that the proper remedy for deficient complaints is often amendment to the complaint, rather than dismissal, allowing claims to be decided on their merits. *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1158-59 (Fed. Cir. 2014). Decisions on the merits should be made whenever possible, absent countervailing considerations. *Schiavone v. Fortune*, 477 U.S. 21, 27 (1986).

"[L]eave to amend may be denied if the court finds that there has been undue delay that would prejudice the nonmoving party, that the moving party has acted in bad faith, or that the amendment would be futile." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1353 (Fed. Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A motion to amend the complaint is futile and should be denied if the proposed amendment would not survive a motion to dismiss. *Solano v. United States*, 164 Fed. Cl. 792, 801 (2023); *Dixon v. United States*, 158 Fed. Cl. 80, 85 (2022). "When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Kemin Foods*, 464 F.3d at 1354-55.

### Leave to Amend Performance and Payment Bond Subclaim

Paragraph 45 of the second amended complaint alleged that ABV would not have incurred $2,069,340.05 in security costs had the Corps waived the requirement that it post a performance bond or provide other security. As noted, ABV alleged the injury was attributable to the Corps' failure to waive that requirement, and by tying its injury to that Corps decision, ABV pleaded itself out of court by asserting an untimely claim. ABV proposes in its third amended complaint to replace that allegation with new allegations that the source of its injury is a breach of contract by the Corps by retaining the security ABV had posted after terminating ABV for default. This proposed claim would accrue when the Corps terminated ABV for default and would be timely.

The defendant argues that the proposed amendment cannot survive a motion to dismiss because the proposed amended claim for the retained security has not been presented to the contracting officer for a final decision, and the court therefore would lack jurisdiction over it, making the proposed amendment futile.

ABV attempts to salvage the proposed claim by arguing that it has presented a claim to the contracting officer for damages arising from the requirement that it post security. ABV relies on *Scott Timber Co. v. United States*, 333 F.3d 1358 (Fed. Cir. 2003), to argue that the CDA's presentment requirement requires only a "clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id*. at 1365. ABV argues that it has presented the same operative facts and requested the same remedy in its claim to the contracting officer; its proposed revised claim merely alters the underlying legal theory on which relief is warranted. ABV claims this approach satisfies the CDA's presentment requirement. (ECF 37 at 4.) As ABV argues, the Federal Circuit explained in *Scott Timber* that claims "aris[ing] from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery" satisfy the presentment requirement. 333 F.3d at 1365. That decision, however, reviewed a decision by a judge of this court holding that when a plaintiff makes "slightly different legal arguments," but "the basic theory underlying plaintiff's claim … is essentially the same as the theory that was presented to the [contracting officer]" the presentment requirement has been met. *Scott Timber Co. v. United States*, 40 Fed. Cl. 492, 499-500 (1998).

4

"The statutory language of the CDA is explicit in requiring a contractor to make a valid claim to the contracting officer prior to litigating that claim." *M. Maropakis Carpentry, Inc v. United States*, 609 F.3d 1323, 1331 (Fed. Cir. 2010). A court may entertain a CDA claim only after that claim has first been "submitted to the relevant contracting officer," and the contracting officer has "issued a final decision on that claim." *K-Con Bldg. Systems, Inc. v. United State*s, 778 F.3d 1000, 1005 (Fed. Cir. 2015). A claim submitted to a contracting officer must provide a "'clear and unequivocal statement that gives the contract officer adequate notice of the basis and amount of the claim.'" *Id*. (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)).

The plaintiff's argument fails. When a claim presented to the contracting officer provides a materially different legal theory than the one alleged in the complaint, the CDA's presentment requirement has not been met. *Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 777 (Fed. Cir. 2021). The purpose of the presentment requirement is "'to create opportunities for informal dispute resolution at the contracting officer level and to provide contractors with clear notice as to the government's position regarding contract claims.'" *Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014) (quoting *Applied Cos. v. United States*, 144 F.3d 1470, 1478 (Fed. Cir. 1998)). Materially changing the legal theory under which the plaintiff seeks damages subverts the purpose of the presentment requirement. *Tolliver Group*, 20 F.4th at 777; *see also Big Will Trucking, LLC v. United States*, 179 Fed. Cl. 731, 738 (2026). *Scott Timber* is not to the contrary. There, the legal theory was not "materially different" than the one presented to the contracting officer; ABV's two theories are materially different.

ABV's claim to the contracting officer advanced an implied duty of good faith and fair dealing legal theory, arguing the Corps frustrated the purpose of the contract. ABV asserted that the Corps' "rigid adherence to its [performance & payment bonds] process delayed ABV's performance of the work." (ECF 23-1 at 32.) ABV also claimed that the Corps should have waived the bonding requirement and worked more cooperatively with ABV. (*Id.* at 33.) Ultimately, ABV argued that the Corps' "handling of the bonds was a breach of the duty of good faith and fair dealing." (*Id*.)

ABV now proposes bringing an allegation based on the theory that the Corps has not met the contractual requirements to retain the security it posted during the re-procurement process once it terminated the contract for default.

ABV's original claim for breach of the duty of good faith and fair dealing and its new breach-of-contract claim are not materially the same. While the claim submitted to the contracting officer alleged facts regarding the frustration of the contract's purpose leading up to ABV's submission of its security, the proposed third amended complaint alleges facts regarding the retention of the performance and payment bonds after the contract was terminated for default.

ABV has not presented its new theory to the contracting officer for a final decision. Under the CDA, ABV has not satisfied the presentment requirement and may not seek to amend its complaint to pursue its new theory. Allowing ABV to file its proposed third amended complaint would be futile, as the new claim would have to be dismissed.

***Subclaims Under the Claim for Breach of the Duty of Good Faith and Fair Dealing***

The proposed third amended complaint includes paragraphs that were previously dismissed. In its motion for partial dismissal, the defendant argued that all claims for damages arising from non-critical path delays, the owner-impeded performance, and the fire alarm systems should be dismissed. (ECF 23 at 32-33.) In response, the plaintiff conceded that it:

> [did] not oppose [d]efendant's request that ABV's claims related to … the [owner]'s actions in impeding ABV's financial wherewithal to perform, and non-critical path delay be dismissed from the complaint. Furthermore, [p]laintiff does not oppose [d]efendant's request that ABV's claim involving the coding of fire alarm submittals [fire-alarm system claim] at the three project sites be dismissed as well.

(ECF 25 at 25.)

Accordingly, these claims, covering the alleged delays related to: (1) owner-impeded performance (ECF 18 at ¶¶ 71-82); (2) fire-protection submittals (*id*. at ¶¶ 109-112); (3) fire-alarm systems (*id*. at ¶¶ 113-115); (4) the network-activity baseline schedule (*id*. at ¶¶ 116-17); and (5) fire-protection specialists (*id*. at ¶¶ 118-122) were all dismissed.

In its proposed third amended complaint, ABV proposes to reallege all the facts underlying these dismissed claims because they "support its claim of a violation of good faith and fair dealing and the resulting improper termination for default." (ECF 37 at 7.) To the extent these allegations supporting ABV's now-dismissed claims also support any surviving claims, they remain in the second amended complaint and need not be realleged.

ABV's motion for leave to file a third amended complaint is **DENIED**. The operative paragraphs of the second amended complaint remain the three subclaims that the defendant did not contest: paragraphs 48-70, 85-108, and 123-138 of the second amended complaint. Pursuant to RCFC 12(a)(4)(A)(i), the defendant shall file its answer to the second amended complaint by **May 19, 2026**.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**